IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL W. PAULSON,<br>　　Plaintiff, | : | |
| | : | |
| v. | : | CIVL ACTION NO. 21-CV-3920-JMY |
| | : | |
| ZACHARY SERODY, *et al.*,<br>　　Defendants. | : | |

**MEMORANDUM**

**YOUNGE, J.**                                                                                          **OCTOBER 15, 2021**

Plaintiff Michael W. Paulson, a convicted prisoner being held at the George W. Hill Correctional Facility ("GWHCF"),[1] filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, raising claims against several GEO Group, Inc. employees based on allegations that he was disciplined without being afforded "limited due process rights." (ECF No. 2 at 12.)[2] Paulson seeks to proceed *in forma pauperis*. For the following reasons, Paulson will be granted leave to proceed *in forma pauperis*, and his Complaint will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

**I.        FACTUAL ALLEGATIONS**[3]

The Complaint names as Defendants several officials and employees of the GEO Group, Inc:[4]  (1) Zachary Serody (identified in the Complaint as a Correctional Officer); (2) Keith

---

[1] In his Complaint, Paulson identifies his current institution as the Delaware County prison. The Delaware County prison and George W. Hill Correctional Facility are one and the same.

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

[3] The facts set forth in this Memorandum are taken from Paulson's Complaint and attached exhibits.

[4] The GEO Group Inc. is a private corporation under contract to provide services at GWHCF.

Heyward (identified as an Investigations Manager); (3) Brick Tripp (identified as a Deputy Facility Administrator); and (4) Richard Leach (identified as the Chief of Security). (ECF No. 2 at 3.) All Defendants are sued in their individual and official capacities. (*Id.*)

Paulson asserts that on or about May 14, 2020, he received a disciplinary report informing him that he had violated certain prison rules and regulations.[5] (*Id.* at 13.) The report was served on him by Correctional Officer R. Stancill within twenty-four hours, and Paulson acknowledged receipt thereof. (*Id.*) Paulson contends he did not received notice, nor was he afforded a disciplinary hearing with respect to the infractions contained in the disciplinary report. (*Id.*)

On June 4, 2020, Paulson was awarded a new inmate worker position by the prison's job coordinator, Dino Lavecchia. (*Id.*) It appears from the Complaint that Paulson believes he was awarded this position after being found "not guilty" of the infractions lodged against him in the disciplinary report; in other words, Paulson believes that because he had not been afforded a disciplinary hearing, he was adjudged "not guilty." (*Id.*) However, on June 5, 2020, shortly after Paulson reported to his assigned work detail on commissary, Correctional Officer Zachary Serody "revoked [Paulson's] ability to work" and labeled him as an "S.T.G. (Security Threat Group) Level II status." (*Id.*) Serody advised Paulson he "would make sure that [Paulson] never would be able to obtain an inmate worker position as long as [Paulson] was incarcerated and that [Paulson] was labeled as such status for disciplinary purposes." (*Id.*)

Between May 26 and December 1, 2020, Paulson filed "various and multiple grievances" regarding these events and submitted letters to appeal his classification to Richard Leach, Keith Heyward, and various other prison officials. (*Id.*) Paulson also contends that during this time,

---

[5] Paulson does not identify the infractions or the rules or regulations that he allegedly violated.

Serody searched his cell and "confiscated all documentation (Grievances, Letters of Appeal, Etc.) from [his] possession relating to events in this claim." (*Id.*)

Paulson was discharged from the prison on January 15, 2021 but was subsequently "re-detained" on March 30, 2021. (*Id.* at 14.) On April 17, 2021, Paulson submitted a job application to Tatianna Lennon, the prison job coordinator, and learned he would be eligible to work as early as April 30, 2021. (*Id.* at 14, 17.) Paulson was scheduled to attend the "Medical Clearance Class" on June 15, 2021, but was not called from his cell to attend class on that date. (*Id.*) Lennon subsequently advised Paulson that Serody had removed Paulson from the class list because of Paulson's classification as an "S.T.G. Level II status for disciplinary purposes from [his] previous incarceration." (*Id.* at 14, 17-18.)

On July 8, 2021, Paulson submitted several appeals with respect to his disciplinary classification. (*Id.* at 14, 20-22.) Appeals were submitted to David Byrne (Facility Administrator), Lieutenant Moore, Leach, Mario Coloucci (Deputy Warden), and Tripp. (*Id.* at 14, 20-24.) On July 21, 2021, Paulson received a response from Tripp indicating that his "STG II status was reactivated from [Paulson's] 2019 incarceration. It was generated on 6/5/2020 for threats against staff." (*Id.* at 14, 26.)

On July 23, 2021, Paulson appealed to Tripp a second time. (*Id.* at 27-29.) Paulson stated that while he had received written notice of "various charges" in May of 2020, he was never "prosecuted before the Hearing Administrator . . . or given an appropriate opp[o]rtunity to answer such charges." (*Id.* at 27-28.) Because of this, Paulson asserted that he could "NOT be subjected to disciplinary action or arbitrary punishment." (*Id.* at 28.) Paulson also disputed the allegations that he had "made any type of threat(s) to any staff member." (*Id.*) Tripp responded on August 2, 2021, indicating that he was "forwarding [Paulson's] request to the Investigations

Manager for review." (*Id.* at 14, 36.)  On August 5, 2021, Paulson spoke with Lieutenant Terry Burke "(Lt. Burke") about possibly removing his S.T.G. Level II status, and Lt. Burke advised Paulson that he would speak with Sergeant Jones about the issue to see whether it could be removed. (*Id.* at 14, 39.)

On August 6, 2021, Paulson submitted another appeal to Heyward and John Burke. (*Id.* at 14.)  Paulson also requested an update from Lt. Burke with respect to his conversation with Jones. (*Id.* at 15, 63.)  On August 12, 2021, Lt. Burke advised Paulson that he had spoken with Jones and asked him whether Paulson's disciplinary classification could be removed. (*Id.* at 15.)  On August 13, 2021, Paulson received a response from Heyward informing him that "a detailed review was conducted and . . . status will **REMAIN** at STG-2 at this time." (*Id.* at 15, 64.) (emphasis in original).

Paulson seeks punitive damages in the amount of $100,000 in "Restitution," removal of the S.T.G. Level II status classification, and the termination of Serody's employment. (*Id.*)

## II. STANDARD OF REVIEW

The Court grants Paulson leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[6]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a

---

[6] However, as Paulson is a prisoner, he will be obligated to pay the $350 filing fee in installments in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

4

claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Paulson is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F. 4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

### III. DISCUSSION

The vehicle by which federal constitutional claims may be brought in federal court is Section 1983 of Title 42 of the United States Code, which provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

#### A. Due Process Claims

Paulson challenges his security status, which he avers has prevented him from securing a prison job. To the extent he seeks to allege a due process violation on this basis, he has failed to allege a plausible claim. The United States Court of Appeals for the Third Circuit has held that

5

prisoners "have no liberty interest in their [ ] job assignments arising directly from the Due Process Clause itself." *James v. Quinlan*, 866 F.2d 627, 629 (3d Cir. 1989). Neither does the denial of a prison job create any Eighth Amendment issues. *Watson v. Sec'y, Pennsylvania Dep't of Corr.*, 567 F. App'x 75, 78 (3d Cir. 2014) (to violate the Eighth Amendment, conduct must result in the denial of the "minimal civilized measure of life's necessities" such as food, warmth, or exercise; a prison job is not "one of life's necessities." (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)). It is also well-settled that prisoners have no inherent constitutional right to placement in any particular prison, to any particular security classification, or to any particular housing assignment. *See Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005). Accordingly, Defendant Serody's alleged efforts to deny Paulson prison employment cannot provide a plausible basis for a constitutional claim.

For these reasons, Paulson's due process claims will be dismissed without leave to amend as he cannot state a claim based on his classification and inability to secure a prison job. Moreover, to the extent that Paulson's Complaint may be read to attempt to assert direct claims based on the loss of his prison job, any such claims would also be implausible. Inmates do not have a constitutional right to employment during incarceration. *See Watson*, 567 F. App'x at 78 ("Inmates do not have a liberty or property interest in their job assignments that would give rise to Due Process Clause protection." (citing *James*, 866 F.2d at 629)); *Fiore v. Holt*, 435 F. App'x 63, 68 (3d Cir. 2011) (*per curiam*) ("[P]risoners enjoy no protected interest in prison employment.").

Finally, to the extent that Paulson avers that he was denied due process rights secured by the "Delaware County Prisons policy" (ECF No. 2 at 12), this claim is not plausible. A prison official's failure to abide by prison policy does not constitute an independent basis for a


constitutional claim. *See Watson v. Rozum*, Civ. A. No. 12-35, 2012 WL 5989202, at *8 (W.D. Pa. Oct. 29, 2012) ("The simple fact that state law prescribes certain procedures does not mean that the procedures thereby acquire a federal constitutional dimension."), *report and recommendation adopted*, Civ. A. No. 12-35, 2012 WL 5989245 (W.D. Pa. Nov. 29, 2012); *see also Laufgas v. Speziale*, Civ. A. No. 04-1697, 2006 WL 2528009, at *9 (D.N.J. Aug. 31, 2006) ("[A] prison's departure from the policies and procedures outlined in the facility's handbook does not, in and of itself, amount to a constitutional violation actionable under § 1983."). Paulson's due process claims will be dismissed with prejudice.

### B. Cell Search and Property Seizure Claims

Paulson avers that between May 26, 2020 and December 1, 2002, his "cell was searched by staff including Correctional Officer Serody, who . . . confiscated all documentation (Grievances, Letters of Appeal, Etc.) from [his] possession relating to the events in this claim." (ECF No. 2 at 13.)  "[P]risoners have no legitimate expectation of privacy and . . . the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984); *Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) ("The Supreme Court has concluded that the Fourth Amendment right to privacy, to be free from unreasonable searches, is fundamentally inconsistent with incarceration."); *Crosby v. Piazza*, 465 F. App'x 168, 172 (3d Cir. 2012) (the Fourth Amendment right to be free from unreasonable searches and seizures does not apply to an inmate's prison cell or personal property, including legal papers); *Molina v. Wenerowicz*, Civ. A. No. 12-5824, 2016 WL 6876319, at *4 (E.D. Pa. Nov. 22, 2016); *Taylor v. Knapp*, 871 F.2d 803, 806 (9th Cir. 1989) (explaining that the Fourth Amendment "does not protect an inmate from the seizure and destruction of his property").

7

Accordingly, any claims based on an alleged "illegal search" of Paulson's cell are dismissed with prejudice under § 1915(e)(2)(B)(ii).

Moreover, to the extent that Paulson attempts to bring a claim for deprivation of property without due process of law, this claim is not plausible. A prisoner detained by a Pennsylvania County cannot state a constitutional claim based on the loss of his property. *See Spencer v. Bush*, 543 F. App'x 209, 213 (3d Cir. 2013) ("'[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.'" (quoting *Hudson*, 468 U.S. at 533)). While the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. Con. Stat. § 8541, provides "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person," there are eight exceptions to this grant of immunity. *See id*. § 8542(b). One such exception is that a political subdivision like Delaware County may be held

> liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):
> (1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and
> (2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, "negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.

§ 8542(a). Because, under these provisions, Paulson has a meaningful post-deprivation remedy available for his property loss claim in an appropriate state court, his constitutional claim is not plausible and must be dismissed.

Paulson alleges that "all documentation" was confiscated. (ECF No. 2 at 13.) Paulson, however, has not provided any specific description of the documentation (other than stating it consisted of "Grievances, Letters of Appeal, Etc.), nor has he alleged how he was harmed by any deprivation. Moreover, given that Paulson had access to grievance proceedings, and there exist state tort and common law remedies available to him, any claim under the Fourteenth Amendment for deprivation of property without due process would fail. *See Tapp v. Proto*, 404 F. App'x 563, 567 (3d Cir. 2010) (per curiam) ("[D]eprivation of inmate property by prison officials does not state a cognizable due process claim if the prisoner has an adequate post-deprivation state remedy.") Accordingly, to the extent Paulson is pursuing a claim of deprivation of property without due process, it does not give rise to a claim for relief and will be dismissed with prejudice.

### C. Grievance Claims

Paulson has attached several copies of grievances and appeal letters to his Complaint. (ECF No. 2 at 17-67.) To the extent that Paulson asserts that any of the named Defendants somehow violated his rights based on an alleged failure to respond adequately to his grievances, any claims based on the handling of grievances fail because "[p]rison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (*per curiam*); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (*per curiam*). Accordingly, the facts alleged by Paulson about his many grievances do not give rise to a plausible basis for a constitutional claim and will be dismissed with prejudice.

### D.     Official Capacity Claims

Paulson has sued all Defendants in their official as well as individual capacities. Claims against GWHCF officials named in their official capacity are indistinguishable from claims

against Delaware County.  *See Arnold v. GEO George W. Will Corrections*, Civ. A. No. 19-5407, 2020 WL 3574527, at *4 (E.D. Pa. July 1, 2020) citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690, n. 55 (1978)).   "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Id.*  In other words, Paulson's official capacity claims are effectively claims against Delaware County.

To plead a basis for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights.  *See Monell*, 436 U.S. at 694.  "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was."  *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'"  *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).  "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'"  *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).  For a custom to be the proximate cause of an injury, a plaintiff must allege facts showing that the municipality "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [plaintiff's] injury."  *Id.* (internal quotations and alterations omitted).  A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and

alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).

Paulson makes no allegation regarding a specific custom or policy by which official capacity claims may be maintained. He has also failed to allege that any Defendant had actual knowledge of prior similar conduct or failed to prevent the repetition of such conduct, and that this failure led to his injury. This is insufficient to assert a plausible *Monell* claim since Paulson fails to allege that the County had a policy or custom to maltreat prisoners, acted deliberately in accordance with that policy or custom, and the policy or custom was the moving force behind the deprivation. Moreover, because Paulson has failed to set forth any plausible claims of a constitutional rights violation against any of the named Defendants, the official capacity claims will be dismissed with prejudice.

### IV. CONCLUSION

For the foregoing reasons, the Court will grant Paulson leave to proceed *in forma pauperis* and dismiss his Complaint with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. Paulson will not be given leave to amend because amendment would be futile. An appropriate Order follows.

                                                **BY THE COURT:**

                                        /s/ John Milton Younge
                                        **JUDGE JOHN MILTON YOUNGE**